The next case is number 221417, Brian Klauber v. VMware, Inc. At this time, would counsel for the appellant please introduce himself on the record to  Good morning, Your Honor. This is David Anguirre for the appellant, Brian Klauber, and I'd like to reserve two minutes for rebuttal, with the Court's permission. You may. This case essentially involves to what extent an employer may create a contract with its employees to violate the wage laws of Massachusetts by trying to define the terms used in the wage laws of Massachusetts as to when commissions are due and payable in violation of the specific provision in the wage law prohibiting special contracts. In this particular case, my client, Mr. Klauber, was employed by VMware. This is, as the Court knows, the second time that there's been a lawsuit by this individual against this entity, which issue I'll address later on. There are two commissions at issue in this case which were not paid. In one case, the DXC deal, is where VMware decided not to pay my client any commissions at all, based on what they call a reconciliation plan, which I submit to the Court, is a simple effort by an employer, which the SJC has warned about for years, that employers can endeavor to attempt to circumvent the Massachusetts wage laws by coming up with creative ways of designing and implementing contracts to define the terms of wage laws as to when they're due and payable. The second commission was on a separate deal called the Barclays deal, where after my client submitted what he believed were due and payable commissions, arithmetically calculable, which is what the SJC has said we need to determine if it's due and payable, and which were not disputed by VMware, VMware then decided to reconcile those commissions and decide whether or not my client was entitled to those commissions. Isn't the key issue here under the statute, at least as I understand it, and correct me if I'm wrong, is whether the commissions were definitively determined to be due and payable. And if they were, then you then can't have another provision that says, well, we're not going to pay them. But if they're not due and payable, by the terms of the commission itself, they turn on some subjective process that is still yet to be done, then you don't have a case, do you? Well, that's exactly the issue in this case, which is what the SJC has said in Camara, in Crocker, and also the court in McLeod has said, you can have contingencies in these employment plans, but they have to be fair and reasonable. And in this particular case, what I submit to the court is that the contingencies imposed by VMware are simply not fair and reasonable because they use the terms to define when commissions are due and payable. And as the lower court in this case, if one reads the lower court's opinion in this case, the judge never considered the special contract provision prohibition of the Massachusetts wage law. He simply relied on the Vonishen case. And if you read the Vonischen case, that case was decided in 2007. I've read that case at least 10 times, there's not a single reference to the prohibition of the wage law in that case, considered by the court. Suppose the employer says, when we get to the end of the year, I'll look at how you've done for the whole year, and if I think you've done above and beyond work, I'll give you a 10% bonus, but if I don't, I won't. The employer then doesn't give the 10% bonus. Is that a violation of the Wage Act? Well, see, the difference is, and that case is actually reported in the Wheels case, if I can give the court's citation, in a moment, there's a big difference between a bonus in stock options, which is a case reported in the... And before you get to a difference, I take it you would agree that would not be a violation in the hypothetical I just gave you? Absolutely not, because the wage law doesn't apply to bonuses or stock options, and there's case law on that. The wage law... Well, suppose you called it a commission. Well, then it's totally different. So you think, that exact same example I gave you, if the employer had just said commission, I'll pay a commission, perhaps zero, or I'll pay 10% if I think you did a really great job, and it's my decision that it turns out. That, you would say, you have to pay the commission? There are two things to consider under that scenario, Your Honor. First, is that fair and reasonable to the employer, to the employee, but the second issue is the issue raised in the Crocker case, which is the SJC case, decided after varnishing. Now, I understand that in that case, it dealt with the release, the waiver of an employee's rights under the wage law. But in this particular case, the contract is created in such a way that by signing it, for all intents and purposes, the VMware is asking the employee to waive their claims and their rights under the wage law. So, to answer your question. Well, that's not entirely fair. Certainly, there's no waiver of claims as to the employee's base salary. And certainly, there's no waiver of claims as to the majority of the transactions. Right? There's a special arrangement or a different arrangement that's put in place concerning extra money, commissions that may be paid or may not be paid on what the parties define as exceptional transactions. And as I read your brief, you don't dispute that the two transactions here in question fall within the definition of exceptional transactions. I do not dispute that. All right. So, we're talking about some portion of the employee's compensation. Yes, Your Honor. Related to the commissions. That is absolutely correct. Related to commissions on a specific class of transactions. Exactly. As defined by VMware, under a contract which we submit to the court is in violation of the wage law for the following reason. At base, I'm wondering if what you're really saying to us is that it's unlawful under Massachusetts law to have a subjective criteria for determining the amount of commissions. Only to the extent that... Unless you pay the highest possible amount. No, Your Honor. Not entirely. So, if it's okay to have a subjective condition for paying commissions, then why isn't that what we have here? Because the SJC has told us that we can't have it in... We can't have what? Crocker and Camara, by the following language, we have held that the special contract provision generally prohibits an employer from deducting or withholding payment of any earned wages and commissions and cannot be overcome by an employee's assent, both because Section 148 makes the special contract prohibition unconditional for reasons of public policy. And that's citing to the electronic data versus AT case. But stay with my question because I want to understand how exactly what you're advocating for us to do. Can you give me an example of a formula for determining conditions that includes as an element the employer's subjective assessment of performance that would not be subject to this exact same argument you're making today? Yes, Your Honor. I think the easiest solution for any company like VMware, which is a national company that employs in different states that have different wage laws, is to make sure that the contract specifically informs the employee that by signing this contract, you may be giving up your rights under the wage laws. And that's exactly what the Crocker court said, that if you're going to do that, it has to be very specific and it has to inform the employee that if you're giving away your wage law claims to the extent that they're applicable, it has to be specifically included in the contract provision. Isn't that only true for earned commissions? Well, that's exactly the point. But here the contract says it's not earned until this reconciliation takes place. So what am I missing? Well, what you're missing, Judge, is in this case, that reconciliation is indefinite in terms of time period, in terms of what needs to be done. In this case, it was months. If we allow these contracts to exist, employers can withhold wages and or commissions for years and not pay. But the claim in this case isn't that the commissions were paid, is that the decision wasn't made in a timely fashion. The point in this case is that the commissions weren't paid. Yes, Your Honor. They were not paid. Well, in one case, not paid at all. In the other case, significantly. Not paid in the amount that the plaintiff wanted. Which was not disputed by VMware when presented as due and payable as a specific. Well, except under the contract, they weren't due and payable. Until they were earned, and they weren't earned until the end of the reconciliation. I understand the court's comment, Your Honor. Any more questions? Thank you. You have reserved two minutes. Thank you, counsel. At this time, if counsel for the appellee will introduce himself on the record to begin. David Shenberg for Defendant Appellee VMware. May it please the court. The three key facts in this case are undisputed. The contracts spell out particular circumstances in which a commission will not be determined except through a review process called reconciliation. Two, the contracts say that until the reconciliation process is completed, the commission will not be earned. Three, the two deals at issue here fit precisely within the spelled out circumstances of the contract. Massachusetts law is also clear. When, as here, there is a compensation plan, Massachusetts will enforce the terms agreed to by the parties, including with regards to contingencies that must be satisfied before a commission becomes earned, due, and payable. Similarly, under the Wage Act itself, it is explicit that a commission becomes a protected wage only after it has become both definitely determined and due and payable. Here, that means plaintiff had no protected commissions until after the reconciliation process because those are the terms of the contract that he signed. For the same reason, the Wage Act special contract provision has no application here. The special contract provision applies only to wages, but the Wage Act makes explicit that commissions do not rise to the level of protected wages until they've been earned by satisfying all contingencies that make them definitely determined and due and payable. Importantly, the special contract provision does not contain any limitations on what the parties may agree to as to what the wages are, including contingencies about when a commission may be considered earned, due, and payable. Is there any limitation on that, say if it's illusory or if there's no mutuality, or where it's clear up front that one side can engage in bad faith? I think that it would be subject to, any contract would be subject to the ordinary rules of contract, but there's nothing particular in the special contract provision that would add anything to that. So your point is the statute's just not applicable, regardless of these other principles? That's correct. That provision in the statute certainly is not. And neither the Cameron nor the Crocker case really speaks here. Yes, of course it's certainly true that the special contract provision protects earned wages. The whole point here is, though, that these commissions never rose to the level of being earned wages because they were not definitely determined, nor due and payable, until after the reconciliation process. Frankly, plaintiff's arguments really boil down to claiming that the parties are not free to contract for contingencies regarding when a commission becomes due and payable, but rather that the parties are stuck with the default rule that in the absence of any other plan, the commission is deemed earned when the deal closes and the salesman's role is done. That's the default rule, but all the cases juxtapose the default rule with the rule of Massachusetts that when there is a compensation plan, the courts will enforce it. In fact, there's no authority in the special contract provision for plaintiff's arguments that there can't be additional contingencies, and all the authority that exists in the cases points the other way. This court in Ellicott points it to three contingencies that were all post-sale and that had nothing to do with the salesman's work. In Vonishen, as here, the court enforced a contract provision that gave the employer the right to adjust commissions post-sale because of the size of the transaction. And numerous other federal and state opinions state the rule that the parties can agree to contingencies for earning a commission and that Massachusetts will enforce those contingencies in the parties' contracts. More generally, as the court stated in Salerno v. Baystate-Ford, the Wage Act requires no more than that the employees be paid in accordance with the terms of their agreement with their employers. And in response to the plaintiff's argument there that the special contract provision made a difference, the court said, fulfilling the parties' contractual understanding cannot logically be considered a circumvention of the Wage Act. That's precisely plaintiff's argument here and that's precisely what this court's response should be. I would like to address an issue that was raised in the briefs but not in argument. Plaintiff makes an argument about there being VMware having discretion based on the words including but not unlimited to in terms of the types of deals that might be considered exception transactions. The argument is completely a red herring here because the two deals at issue do not rely on any kind of undefined terms but rather the circumstances are spelled out specifically in the contracts. Including but not limited to, in addition, are not words that do confer any kind of carte blanche on a party but rather they're simply words that indicate that the list of examples that follows is not to be considered exhaustive. Now, including but not limited to could give rise in some other hypothetical case under other hypothetical facts to some kind of dispute about what's within the scope of that term. But again, it's not material here because these deals fit within the list of examples that was explicitly in the contracts. Furthermore, the presence of discretion wouldn't do anything to help plaintiff here. There's no rule against a contract conferring discretion on one party. In Vonishen, again, the court enforced a provision that gave the employer that kind of discretion to adjust a commission post sale. And in McAleer that plaintiff relies on heavily, I believe that the plaintiff has simply misread that case. In that case, Prudential lost not because it had too much discretion in its contract but because it didn't have enough discretion. It didn't have the discretion that it claimed. That's why the court began its discussion of the issue in that case by essentially saying, well, if there were that kind of discretion, then the commission wouldn't be due and payable. But the problem is Prudential doesn't have the discretion that it says its contracts have. The words of the contract simply didn't confer that kind of discretion. And it's in that context that the court says Prudential is making, trying to stretch the words of the actual agreement so much that it's doing violence to the words of its own contract in a way that would render that contract language meaningless. That's all it's saying there. The contract and the law are clear. Massachusetts enforces commission contingencies to which the parties have agreed. Under the contracts, plaintiff has no commission until the reconciliation process has been completed. These deals fit precisely within the types of deals that can be adjusted during the reconciliation process. That's why the district court granted summary judgment on plaintiff's claim for unreconciled commissions, and this court should affirm that judgment. Plaintiff's only other point on appeal I'd like to address briefly. It's the motion to strike. It should also be rejected. The district court analyzed the settlement references in the summary judgment evidence, paragraph by paragraph. It only struck those that plaintiff tried to use to suggest that they supported the validity of his case in this matter. That's the perfectly appropriate use of federal rule of evidence 408. And even if it weren't, any error would have been harmless. The circuit evidence shows nothing about the enforceability of the contracts, which is the issue here, where what matters is that plaintiff signed the contracts. The contracts are enforceable under Massachusetts law, and therefore, plaintiff got everything to which he was entitled under the Wage Act. Thank you. If there are no questions, that's all I have. Thank you. Thank you, counsel. At this time, if counsel for the appellant would reintroduce himself on the record. He has a two-minute rebuttal. David Engware for the appellant. If the court looks at the lower court's decision, this is what the court wrote about its reliance on varnishing and daily. The case decided in 2007, quote, the court took no issue with such broad discretion. That was the lower court's reliance on varnishing that led him to conclude to allow summary judgment. If we look at that 2007 decision and compare it to DeFiore versus American Airlines, which is in 2009, the SJC says, the SJC confirms that legislature was cognizant that some employers may seek to find ways through specific contracts to avoid compliance with the wage laws. In 2013, the McAleer case, just referred to as my brother counsel, versus Prudential Insurance, that court specifically held that that particular provision in that contract was so broad that it renders the plan meaningless. And that's exactly the point that I'm trying to make. None of these cases were referred to by the lower court. They didn't even refer to these cases and simply relied on varnishing, which didn't have the interpretation of the SJC in the subsequent cases. In addition to McAleer, we have the Weins case, which they relied on, which is the issue of bonus and stock options, which is completely, should be disregarded in terms of looking at wage law prohibition in this case. So I submit to the court, Your Honor, that to the extent that the lower court in this case, and that's what we're looking at, relied on case law from 2007 that didn't even talk about the wage act at all, and for the court to rely on that and say, well, the court thought that the broad discretion there was okay, is not a sufficient basis to allow summary judgment because the court didn't even consider the subsequent SJC cases, which are interpreting the wage law, and that is the court that has the final say as to what the meaning of these particular laws should be.